D. Blair Clark
LAW OFFICES OF D. BLAIR CLARK PC
967 E. Parkcenter Blvd., #282
Boise, ID 83706
Phone: (208) 475-2050
Fax: (208) 475-2055
Email: dbc@dbclarklaw.com
Idaho State Bar No. 1367
Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>**IDC ENTERPRISES, INC.**, an Idaho corporation<br><br>Debtor. | Case No. **20-20081-TLM**<br><br>Chapter 11, Subchapter V<br><br>**DEBTOR'S MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM OF BANK OF THE PACIFIC** |

COMES NOW the Debtor, and submits this Memorandum in Support of the Objection to the Secured Claim of Bank of the Pacific, and in response to the documentation filed as Docket 112 et al, as follows:

**OVERVIEW:**

The record in this case consists of the testimony of Jason Lunders at the prior hearing on the Motion to Dismiss or Convert, in which counsel for Bank of the Pacific (BOP) attempted to get Mr. Lunders to agree that his loan documents granted them a right to claim "all equipment" of this Debtor as collateral for two loans.    Mr. Lunders disputes the authenticity of the documents, with good reason, and

DEBTOR'S MEMORANDUM - Page  1

shows that there was EITHER: (1) an agreement that the four items of equipment now in Alaska were the sole collateral for the loans, or (2) there was never a meeting of the minds as to the items of collateral.   Under either of these theories, the bank cannot be allowed to claim the entirety of Debtor's equipment as collateral for this obligation.

BOP has Claim No. 5 on file in this case.   For purposes of this Claim Objection, there is no objection at this time to the dollar amount of the claim.   The issue is limited to the extent of the secured status of BOP.

It must be remembered at all times that BOP is NOT IDC's main bank.   IDC had never done business with BOP prior to the Viking Lumber Alaska jobs.   Moreover, Viking itself had referred IDC to BOP; it was Viking's bank and evidently had been for some time.   The loan was put together primarily via email and telephone.   And the picture of the transaction, as shown by the differences in the approach to the case, is drastically different.

Mr. Lunders' declaration, which he supports with documentation as well as did Mr. Mesojednik, shows that this loan was put together when they got the Viking job; they were trying to get equipment from Idaho to Seattle and thence to Alaska; that they found out that Viking's equipment that was promised to them to use for the job was woefully inadequate; that to buy another piece of equipment, they agreed to add two pieces of equipment to secure the purchase of one of them.   This does not seem to be in too much dispute.

However, the dispute arises about the 'markout' on the security agreement that Mr. Lunders did. Mr. Mesojednik seems to want to gloss over that fact, when he said that the bank did not agree to that "unilateral modification" and call it a day.   But it is not that simple.

DEBTOR'S MEMORANDUM - Page  2

When BOP sent them documentation to evidence the loans, Ms. Avalos admitted that they had *lost the original documents* and sent a *new* set for execution. This ties in with Mr. Lunders' statements that he does not believe there was any documentation signed prior to May, 2019 to start with. The "Change in Terms Agreement" reflected that various terms would be changed, including the description of the collateral to be the "all collateral" that BOP claims they wanted. However, there is no dispute that Mr. Lunders <u>did not sign that document as typed</u>, but rather marked out that portion of the Agreement and returned it to her via email. Mr. Mesojednik claims that he sent this documentation to Mr. Lunders, but the email chain shows that they were sent by Ms. Avalos. And it was to Ms. Avalos they were returned. There was no discussion in any of the documents on either side that shows that BOP ever advised Mr. Lunders that his "unilateral modification" had been rejected, as Mesojednik claims. Had he done that, there would clearly be no meeting of the minds, and thence, no contract.

Had Mesojednik advised Lunders of BOP's position, then the parties could have clearly discussed the issues at the time, and either come to agreement or, conversely, recognize that they had NO agreement. As discussed hereafter, BOP did not have the right to simply do nothing; rather, that is what it did.

The signed and bar-coded 'change in terms' agreement clearly shows that the collateral for the $300,000 loan was limited to the items on the equipment list that the parties had all been discussing, not everything else. BOP somehow is attempting to say that change was ineffective.

**STATUTORY REQUIREMENTS:**

The Uniform Commercial Code requires that "Except as otherwise provided in the uniform commercial code, a security agreement is effective according to its terms between the parties, against

DEBTOR'S MEMORANDUM - Page  3

purchasers of the collateral, and against creditors." Idaho Code § 28-9-201 GENERAL EFFECTIVENESS OF SECURITY AGREEMENT

To be effective, one of the three requirements of Idaho Code § 28-9-203 to have a valid security interest is that ". . . the debtor has authenticated a security agreement that provides a description of the collateral." That is contained in the Change in Terms Agreement. The Security Agreement, which purports to grant more, is conspicuously and suspiciously different than any of the other documents in the loan package, in that it has no bank-printed bar code on the document. BOP attempted to say at the prior hearing words to the effect that "sometimes they do, sometimes they don't." Why, then, does every other document in BOP's file contain such a code *except* the security agreement?

A valid and enforceable security agreement requires a sufficient description of the collateral to which the security interest will attach. <u>Karle v. Visser</u>, 141 Idaho 804, 118 P.3d 136, (Idaho 2005) Idaho Code § 28-9-203 ATTACHMENT AND ENFORCEABILITY OF SECURITY INTEREST - PROCEEDS - SUPPORTING OBLIGATIONS - FORMAL REQUISITES

**BANK'S OBLIGATION IF COLLATERAL DISPUTED:**

When Mr. Lunders sent the documents back to Naomi Avalos different than what the bank wanted (if indeed, that is what happened, to which we do not concede), the bank had an affirmative set of duties, which they did not perform. See Idaho Code § 28-9-210, which describes the chain of events that is to occur. This is a "Request Regarding List of Collateral," which allows the Debtor to request "that the recipient approve or correct a list of what the debtor believes to be the collateral securing an obligation and reasonably identifying the transaction or relationship that is the subject of the request."

DEBTOR'S MEMORANDUM - Page  4

Idaho Code § 28-9-210 REQUEST FOR ACCOUNTING - REQUEST REGARDING LIST OF COLLATERAL OR STATEMENT OF ACCOUNT

The statute then provides that the secured party—BOP—has 14 days to reply to such a request. It could have simply said what items it claimed, or disclaimed them, or even stating that it was "all assets" if that were the terms of the deal.   However, the statute does not say that BOP could simply ignore the request and stay silent.   Yet, BOP evidently did exactly that—nothing.   BOP had actual notice by Mr. Mesojednik's own Affidavit that IDC disputed the claim of "all equipment," but took no steps to respond to that dispute.

The statutes provide a remedy for such a failure-- § 28-9-625. REMEDIES FOR SECURED PARTY'S FAILURE TO COMPLY WITH CHAPTER.   Subsection (f) is clear: "If a secured party fails to comply with a request regarding a list of collateral or a statement of account under section 28-9-210, the secured party may claim a security interest *only as shown in the statement included in the request* as against a person that is reasonably misled by the failure." (emphasis added).   It is similar to an estoppel or waiver, but is a statutory remedy not dependent on 'equitable concepts.'   BOP's failure to respond to the 'unilateral modification' or to attempt to resolve the issue has the effect of limiting its security interest to those items, and those <u>only.</u>

BOP will undoubtedly try and contend that this "unilateral modification" was not an 'inquiry' as per the Code.   However, it was modified and signed by Mr. Lunders, and obviously showed that IDC believed that it had not granted a lien on 'all equipment.'    Mr. Lunders is clear that he would not have signed such a document.   There are issues of fact regarding the genuineness of the security agreement and documents that BOP has submitted to the Court in its prior evidentiary proffer and in Mr.

DEBTOR'S MEMORANDUM - Page  5

Mesojednik's Affidavit, especially when Mr. Lunders has a document in his possession which is not in BOP's records.

The Court needs to be careful about taking BOP's documents without concern:   Ms. Avalos told Mr. Lunders that they could not find the original loan documents; see her email to that effect.   That is why she sent the Change in Terms Agreement, among other reasons.   Mr. Lunders believed that there were not any loan documents signed until May of the following year; Ms. Avalos could not find any prior sets.   So where did the documents in BOP's Affidavit come from?   When were they found and how?   And when found, what did BOP do to try and resolve the questions raised by Mr. Lunders?   All these are unanswered.

This preliminary hearing on the claim objection should be set over for a final, evidentiary hearing, with exhibit and witness lists, and time for discovery.   If this were a motion for summary judgment on both sides, the Court would have to find there to be genuine issues of material fact that would preclude entering a final order or judgment for either party at this stage of the record.

Dated this 3rd day of December, 2020.

> LAW OFFICE OF D. BLAIR CLARK PC
>
> by /s/ D. Blair Clark
> D. Blair Clark, for Debtor

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of December, 2020, I caused to be served a true and correct copy of the foregoing, by ECF, to the following:

Brett R Cahoon on behalf of US Trustee
ustp.region18.bs.ecf@usdoj.gov

David Wayne Newman, on behalf of US Trustee
ustp.region18.bs.ecf@usdoj.gov

Gary L Rainsdon
trustee@filertel.com,
id12@ecfcbis.com;lori@filertel.com;cblackburn@filertel.com;jhancock@filertel.com

Sheila Rae Schwager on behalf of Creditor Bank of the Pacific
sschwager@hawleytroxell.com, dsorg@hawleytroxell.com

Randall Peterman, on behalf of Viking Lumber
rap@givenspursley.com

US Trustee
ustp.region18.bs.ecf@usdoj.gov

Patrick Geile, Trustee
patrick@geilecorp.com

/S/ D. Blair Clark
_____
D. Blair Clark