## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>IDC ENTERPRISES, INC.,<br><br>Debtor. | Case No. 20-20081-NGH<br><br><br>Chapter 7 |

## MEMORANDUM OF DECISION

**INTRODUCTION**

Chapter 7[1] trustee Patrick Geile ("Trustee") filed a motion for turnover of certain equipment and vehicles used by IDC Enterprises, Inc. ("Debtor") in its logging business. Doc. No. 116 (the "Motion").[2] Creditor Bank of the Pacific ("BOP") filed a joinder to Trustee's Motion. Doc. No. 126. Debtor opposes the Motion and asserts that much of the personal property at issue is owned by third parties and is not estate property. A hearing was held on December 7, 2020, and the Court determined a further evidentiary hearing was necessary. Doc. No. 132 (minute entry). A videoconference evidentiary hearing was held on February 18, 2021. The parties submitted written closing arguments. The Court took the matter under advisement. Having considered the evidence and the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Trustee's Motion also seeks turnover of a $3,000 check payable to Debtor, however Trustee abandoned this request.

MEMORANDUM OF DECISION - 1

arguments of the parties, the Court reaches the following findings of fact and conclusions of law pursuant to Rules 7052 and 9014.

**BACKGROUND**

Debtor filed a chapter 11 petition on February 27, 2020, and elected to proceed as a small business debtor under subchapter V of chapter 11. Doc. No. 1.[3] Debtor's sole equity holder, Jason Lunders ("Lunders"), signed the petition as Debtor's president. *Id.* at 4–5. On March 12, 2020, Debtor filed its schedules. Ex. 216 at 1–16 (the "Schedules"). Debtor's Schedule A/B lists machinery, fixtures, and equipment with a current value of $1,467,000. *Id.* at 4–5. Schedule A/B specifically lists only some of the equipment—a 2006 290 Link Belt Jewell front log loader, a 2006 620C Tigercat Skidder, a 2005 290 Kobelco Jewell YODER, a 2004 Kobelco 330 Jewell front w/Waratah 624, and miscellaneous items located in a van trailer. *Id.* The rest of the equipment is incorporated into Schedule A/B by reference to an "attached list of equipment".[4] *Id.* at 4.

This list was not in fact attached to the Schedules, but was filed separately as Doc. No. 28 on March 13, 2020. Ex. 300 (the "Supplement"). The Supplement listed the following items of equipment[5]:

---

[3] Pursuant to Federal Rule of Evidence 201(c), the Court takes judicial notice of the record in this case. *See Rainsdon v. Garcia (In re Garcia)*, 465 B.R. 181, 188 n.6 (Bankr. D. Idaho 2011) (noting that in addition to taking judicial notice, the Court may give evidentiary weight to assertions in a debtor's schedules under Federal Rule of Evidence 801(d)) (citing *In re Schweizer*, 354 B.R. 272, 278 n.3 (Bankr. D. Idaho 2006); *In re Moore*, 269 B.R. 864, 869 n.7 (Bankr. D. Idaho 2001)).

[4] Schedule A/B states in relevant part: "A PDF file has been attached to this document. This file will appear here when a PDF is created using the ECFiling button on the Print Documents window." Ex. 216 at 8.

[5] There are unaddressed typographical errors in the Supplement, but several seemingly misspelled words are potentially industry terms for certain items of equipment. The Court declines to make
(Continued)

MEMORANDUM OF DECISION - 2

| |
|---|
| 1995 500T Valmet & Spare head |
| 1995 892 Valmet Forwarder |
| 1987 518 Skidder & Parts skidder |
| D7F Dozer w/4-way hydraulics & winch |
| 1990 425 Prentice Loader |
| 225 Catepillar [*sic*] loader w/Pierce carrier |
| 5220 Case Mower tractor |
| Gallion Road Grader |
| 12G Catepillar [*sic*] Grader |
| 1993 Catepillar [*sic*] 240 w/Denhorco Stroke declimber |
| 2003 Timbco 425D w/360 degree head hotsaw |
| 1995 Kobelco 200 Jewell front log loader |
| 2007 2054 John Deere w/Wartah [*sic*] 622B |
| 2009 2054 John Deere w/Waratah 622B |
| 1974 generic log & pole trailer |
| 1944 Frueff log & pole pipe trailer |
| 1995 Teton 5th Wheel Camper |
| 1986 Kenworth truck trailer w/log bunks |
| 1956 Reliance log & pole trailer |
| 1984 Kenworth truck tractor w/flatbed |
| 2005 Ford F350 Cab & chassie [*sic*] |
| 2001 Wabash 53' Van Trailer |
| 1994 Lincoln 3 axle log & pole trailer |
| 2001 Ford F350 Pickup w/ shop box |
| 2003 Ford F450 Pickup w/ crane & winch (in Alaska) |
| 2007 Kenworth truck & tractor w/ log bunk |
| 1989 Peterbuilt [*sic*] 379 log truck w/Peerless trailer (in Alaska) |
| 1988 Log trailer |
| 1973 Peerless log trailer (in Alaska) |
| 1979 65/70 ton Detach Lowboy |
| 1991 Western Log dog trailer |
| 2004 Standard equipment trailer |
| 1974 GIND Container Chassie [*sic*] |
| 1975 GIND Container Chassie [*sic*] |
| 2006 Western Star Truck w/ tractor |

*Id.*

---

corrections or attempt to identify typographical errors unless the word is used in common language and is clearly misspelled.

MEMORANDUM OF DECISION - 3

The Schedules did not list any unexpired leases for equipment. Ex. 216 at 14. Likewise, Debtor's Statement of Financial Affairs, Ex. 216 at 16–22 (the "SOFA"), states Debtor does not hold or control any property that another entity owns. *Id.* at 20. Both the Schedules and the SOFA were signed by Lunders under penalty of perjury. *Id.* at 1, 22. The Schedules have not been amended.

On May 26, 2020, Debtor filed a plan of reorganization. Ex. 301 (the "First Plan"). The First Plan included a liquidation analysis of the equipment listed in the Schedules and Supplement. *Id.* at 9–10. The First Plan also listed items not in the Schedules or Supplement, to wit a 2001 Kenworth with lockers, a 2003 Dodge pickup with tanks, a 1997 Ford F350, a 1995 Ford F350, and a 1997 Linkbelt 3400 with Denarco processor. *Id* at 9. The Court denied confirmation of the First Plan. Doc. No. 66.

On August 17, 2020, the Court ordered Debtor to provide proof of insurance on several items of equipment that had not been proven to be insured. Doc. No. 81 (minute entry). On August 23, 2020, Debtor filed a statement of compliance, Doc. No. 82, and attached two documents which were admitted at the February 18 evidentiary hearing on this matter as Exs. 314 and 315. Exhibit 314 is a "Certificate of Insurance" from Progressive Commercial and Ex. 315 is a document titled "Evidence of Property Insurance" from Northwest Insurance Agency. These documents show Debtor obtained insurance on several items of equipment listed in the Schedules and Supplement. In addition, Debtor also obtained insurance on the following items it did not list in the Schedules or Supplement: a 1994 Ford F Super Duty, a 1995 F350, a 1995 Hitachi

MEMORANDUM OF DECISION - 4

EX200LC, a 1997 Linkbelt 3400, a 2009 SK290 Log Loader, and a Komatsu PC300HDWH-6L log loader.[6]  Ex. 315.

On September 8, 2020, Debtor filed a second proposed plan of reorganization.  Ex. 304 (the "Second Plan").  The Second Plan included a liquidation analysis that was nearly identical to the liquidation analysis in the First Plan.  *Compare* Ex. 301 at 9–10 *with* Ex. 304 at 10–11.  The Second Plan's liquidation analysis lists all the equipment listed in the Schedules and Supplement.  *Compare* Ex. 216 at 3–4 and Ex. 300 *with* Ex. 304 at 10–11.[7]  The Second Plan's liquidation analysis also lists several items of equipment not listed on the Schedules or Supplement, to wit a Komatsu PC30OHDW-6L,[8] a 1995 Ford F350, a 1997 Ford F350, a 1997 Linkbelt 3400 with Denarco Processor, and a 2004 Bulldog trailer.  *Id.* at 10–11.

---

[6] At first glance, some items of equipment in the insurance documents appear not to be listed in the Schedules and Supplement.  However they appear to correspond with listed equipment by make or model but are identified with different model years.  For example, a "2001 KW" is on the Progressive Certificate of Insurance, Ex. 314 at 2, while the Supplement lists a 2007 Kenworth, Ex. 300 at 2.  Lunders testified the model year "2007" in the Supplement was a typographical error, and Trustee's closing argument appears to concede the 2001 and 2007 Kenworths are the same vehicle by identifying the same title, Ex. 332, for both a 2001 Kenworth and a 2007 Kenworth.  Doc. No. 173 at 10, 11.  Exhibit 332 is the Idaho certificate of title for a 2001 Kenworth.  Thus, the Court concludes the 2007 Kenworth listed in the Supplement was indeed intended to be a 2001 Kenworth.  Similarly, the Northwest Insurance Agency Evidence of Property Insurance document, Ex. 315, lists a 1989 Prentice 425P, which appears to correspond with the 1990 425 Prentice Loader in the Supplement, Ex. 300 at 1; a 2005 Linkbelt 290, which appears to correspond with the 2006 290 Link Belt Jewell front log loader listed in the Schedules, Ex. 216 at 4; and a 2007 Tigercat Skidder, which appears to correspond with the 2006 620C Tigercat Skidder listed in the Schedules, Ex. 216 at 4.

[7] The Second Plan's liquidation analysis does not list the 2003 Dodge pickup that was listed in the First Plan's liquidation analysis.  *Compare* Ex. 301 at 9 *with* Ex. 304 at 10–11.

[8] The Court notes that the product number listed in the Second Plan, *id.* at 10, and that listed in the Evidence of Property Insurance document from Northwest Insurance Agency, Ex. 315 at 1, appear to differ as the former reads PC30OHDW-6L (the fifth character is the letter "O") and the latter reads PC300HDW-6L (the fifth character is the number zero).  This is likely due to typographical error, and the remainder of the product number is identical.  Thus, this issue is immaterial.

MEMORANDUM OF DECISION - 5

Before the Court ruled on confirmation of the Second Plan, it granted BOP's pending motion to dismiss in part, determining cause for dismissal existed, but conversion would be in the best interest of creditors. On September 30, 2020, the Court entered an order converting Debtor's case from chapter 11 to chapter 7. Doc. No. 99. In its oral ruling on the motion to dismiss, the Court stated, "In this case, Debtor's assets appear to have value exceeding the claims of its creditors. The Court concludes, therefore, that conversion is in the best interest of the creditors."

On November 6, 2020, Trustee filed his Motion seeking "an order compelling Debtor to turnover certain property and funds." Doc. No. 116. BOP joined in the motion. Doc. No. 126. Debtor objects.

## DISCUSSION AND DISPOSITION

### A.     Summary of the Arguments

Trustee argues Debtor should be required to turn over all items of equipment listed in the Schedules, Supplement, First Plan, Second Plan, Certificate of Insurance from Progressive Commercial, and Evidence of Property Insurance from Northwest Insurance Agency.[9] In addition, Trustee seeks turnover of certain equipment Trustee asserts Debtor owns but was not so listed. Debtor argues not all the identified and listed equipment is owned by it and thus is not property of the estate.

---

[9] Trustee and BOP also argue Debtor should be judicially estopped from asserting the items listed in these documents are not owned by Debtor. While judicial estoppel might apply to prevent Debtor from taking positions that contradict assertions made in some of these documents, *see Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270–71 (9th Cir. 2013) (explaining the doctrine of judicial estoppel and the relevant factors courts consider), the Court declines to exercise its discretion to apply judicially estoppel, and will reach the merits of Debtor's objection to Trustee's Motion.

MEMORANDUM OF DECISION - 6

### B. Turnover

Upon commencement of a bankruptcy case, an estate is created that includes, among other things, "all legal or equitable interests of the debtor in property[.]" § 541(a)(1). Any interest Debtor had in the equipment that is the subject of this contest became property of the bankruptcy estate when Debtor filed its bankruptcy petition. Pursuant to § 521(a)(4), if a trustee is serving in a case, a debtor must "surrender to the trustee all property of the estate[.]" *See also In re Marlin*, 2021 WL 815856, at *11 (Bankr. D. Idaho Feb. 26, 2021). This Court previously explained that turnover orders under § 521(a)(4) are not necessary, but "merely reinforce the requirement of § 521(a)(4) that debtors surrender all property of the estate to trustees." *Hopkins v. Nebeker (In re Nebeker)*, 2018 WL 735340, at *4 n.9 (Bankr. D. Idaho Feb. 6, 2018) (citing *In re Espinoza*, 2003 WL 21981591, at *3 (Bankr. D. Idaho Aug. 12, 2003)). However, in seeking such an order, "[t]he trustee has the burden of proving the estate is entitled to turnover of property." *Hopkins v. Quilling (In re Quilling)*, 2014 WL 6863112, at *4 (Bankr. D. Idaho Dec. 3, 2014) (citing *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1200–01 (9th Cir. 2012)).

A debtor's ownership rights in property are defined by state law. *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002); *Foothill Capital Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir. 1997). Broadly, Trustee seeks turnover of two types of personal property—vehicles with a certificate of title issued in Idaho and other equipment. The Court will address each category of property in turn.

MEMORANDUM OF DECISION - 7

### 1. Vehicles with Idaho Certificate of Titles in Evidence

Under Idaho law, ownership of a motor vehicle is determined by the certificate of title issued by the Idaho Transportation Department. The Idaho motor vehicle title laws provide that "no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle." Idaho Code § 49-503. This Court has held on several occasions that, for bankruptcy purposes, the owner of a vehicle is the party whose name appears on the certificate of title. *Hillen v. Dennis Dillon Auto Park & Truck Ctr., Inc. (In re Byrd)*, 546 B.R. 434, 439 (Bankr. D. Idaho 2016) (citing *In re Woods*, 386 B.R. 758, 762 (Bankr. D. Idaho 2008); *Hopkins v. Shradley (In re Shradley)*, 03.1 IBCR 7, 8 (Bankr. D. Idaho 2003)). Idaho Code § 49-503 "is 'strictly construed by the courts to promote the underlying legislative policy that vehicle ownership be determined exclusively by reference to the name on the certificate of title.'" *Hopkins v. Frazier (In re Tews)*, 502 B.R. 566, 569 (Bankr. D. Idaho 2013) (quoting *Gugino v. Knezevich (In re Pegram)*, 395 B.R. 692, 695 (Bankr. D. Idaho 2008)). If the certificate of title lists multiple owners, and uses an "or" in that list, each listed individual "is deemed to be an owner of the vehicle." *In re Bill*, 529 B.R. 779, 783 (Bankr. D. Idaho 2015) (citing *Hopkins v. Brasseux (In re Saunders)*, 2008 WL 538443 (Bankr. D. Idaho Feb. 25, 2008)). "[I]f one of the listed owners files a bankruptcy petition, the vehicle becomes property of the bankruptcy estate without regard to which of the listed owners paid the purchase price of the vehicle." *Id*.

MEMORANDUM OF DECISION - 8

In this case, the record includes an Idaho certificate of title for each of the below listed vehicles, and those titles list Debtor as the owner. Therefore, the Court concludes each of the below vehicles is property of the estate and should Debtor possess any of these vehicles, Debtor is required to surrender the vehicle to Trustee.[10]

| Vehicle | VIN | Name(s) on Certificate of Title | Exhibit |
|---|---|---|---|
| 1956 Reliance Trailer | 56307 | IDC Enterprises Inc. or Jason Del Lunders | 317 |
| 1972 Peerless Division | 713453 | IDC Enterprises Inc. | 318 |
| 1973 Peerless Division | 724303 | IDC Enterprises Inc. | 320 |
| 1974 Trailer | TAP4362 | IDC Enterprises Inc. | 321 |
| 1974 Gindy | 405531L | IDC Enterprises Inc. | 322 |
| 1975 Gindy | 458589L | IDC Enterprises Inc. | 323 |
| 1984 Kenworth | S322518GL | IDC Enterprises Inc. | 324 |
| 1986 Kenworth | 1XKWDB9X5GS331072 | IDC Enterprises Inc. or Jason Del Lunders | 325 |
| 1988 Miller Trailer | 1P9CJ2628JA020030 | IDC Enterprises Inc. | 326 |
| 1989 Peterbilt 378 | 1XPFDB9X8KD267858 | IDC Enterprises Inc. | 327 |
| 1991 Trailer | 1C94AA303M0112310 | IDC Enterprises Inc. | 328 |
| 1994 Trailer | 0R57195 | IDC Enterprises Inc. | 329 |
| 2000 Peterbilt 379 | 1XP5DB9XXYD510834 | IDC Enterprises Inc. | 330 |
| 2001 Ford F350 | 1FTSW31F81EB04736 | IDC Enterprises Inc. | 331 |
| 2001 Kenworth | 1XKWDB0X91R962998 | IDC Enterprises Inc. | 332 |
| 2002 Utility Trailer | 1UYVS25332U768602 | IDC Enterprises Inc. | 333 |
| 2003 Dodge Ram 3500 | 3D7LU38C53G799278 | IDC Enterprises Inc. | 334 |
| 2004 Starline Trailer | 13YFS20284C091586 | IDC Enterprises Inc. | 335 |
| 2005 Ford F350 | 1FDWF37P85EB92996 | Jason Lunders or IDC Enterprises Inc. | 336 |
| 2006 Western Star | B052008161 | IDC Enterprises Inc. | 337 |
| 2015 Polaris RZR UTV | 3NSVAE872FF440277 | IDC Enterprises Inc. | 338 |
| 2016 PJ Trailer | 4P5FD2525G1249019 | IDC Enterprises Inc. | 339 |

---

[10] The record was not clear that Debtor possesses all the vehicles. Debtor may have "parted out" some of the vehicles in the process of making repairs to its equipment. Additionally, some of the vehicles may be located out of state and are not currently in Debtor's possession. This list includes all the items of equipment for which a corresponding certificate of title is in evidence regardless of whether the equipment was listed in the Schedules, Supplement, First Plan, Second Plan, Certificate of Insurance from Progressive Commercial, or Evidence of Property Insurance from Northwest Insurance Agency. To the extent not discussed in this section, vehicles for which Trustee did not provide an Idaho certificate of title are addressed in the remainder of this decision.

MEMORANDUM OF DECISION - 9

Trustee also requested turnover of three other unscheduled[11] vehicles: (1) a 1994 or 1997 Ford F350, (2) a 1995 Ford F350, and (3) a 2008 Ranger ATV, which may be titled in the name of Jason Lunders.  The record does not contain a certificate of title for any of these vehicles.  Accordingly, the Court concludes that Trustee has not carried his burden regarding these three vehicles.

### 2. Other Equipment

Under Idaho law, possession of personal property is *prima facie* evidence of ownership.  *State v. Odberg (In re Odberg's Estate)*, 182 P.2d 945, 949 ( Idaho 1947) (citing *Hare v. Young*, 146 P. 107, 109–10 (Idaho 1915); *Am. Fruit Growers, Inc. v. Walmstad*, 260 P. 168, 170 ( Idaho 1927) (stating "Possession of personal property is indicia of ownership.  One in custody of personal effects is presumed to be rightfully in possession until the contrary appears.")).  Trustee argues Debtor has made multiple assertions that it owns the equipment at issue by listing the equipment in its Schedule A/B, the Supplement, Debtor's two proposed chapter 11 plans, Debtor's tax depreciation schedules, certificates of insurance, invoices, and loan documents.  In contrast, Debtor largely relies on the testimony of Annette Moore, who served as Debtor's accountant during the chapter 11 portion of the bankruptcy case, to establish much of the property at issue is not owned by Debtor.

At the outset, the Court notes that Debtor and Trustee seem to agree that at least some of the equipment at issue is owned by Debtor.  Regarding the equipment and tools

---

[11] None of these vehicles are listed on the Schedules or Supplement.

MEMORANDUM OF DECISION - 10

in dispute, the parties disagree as to what weight the Court should give the representations Debtor made regarding those items in the Schedules and other documents in this case.

### a. Items of Equipment not in Dispute

Both Moore and Trustee agree that certain items of equipment are owned by Debtor. Based on her review of Debtor's books and records, Moore compiled a list of equipment she determined Debtor owned. Exhibit 106 at 6–7. Comparing Moore's list to the items of personal property Trustee requested in his closing argument reveals several items of property in common. *Compare* Ex. 106 at 6–7 *with* Doc. No. 173 at 9–11. As the parties agree the following pieces of equipment are owned by Debtor, the Court concludes Debtor must surrender all such equipment in its possession[12] to Trustee:

- Case 5220 Mower Tractor;
- 12G Caterpillar Grader;
- 1995 Kobelco 200 Log Loader;
- 1995 Teton 5th Wheel Camper;
- 1997 Linkbelt 3400 Processor DT 3000W;
- 1983 John Deere 2640 Tractor;
- 2004 Kobelco 330 Jewell with Processor;
- 2005 Kobelco 290 Jewell Loader;
- 2007 John Deere 2054 Loader with Wartah 622B; and

---

[12] Some items of equipment are in Alaska, and, therefore, may not be in Debtor's possession.

MEMORANDUM OF DECISION - 11

- 2012 Trailer for Ranger ATV.

### b. Disputed Equipment Listed in the Schedules and Supplement

Debtors in bankruptcy are required to disclose all ownership interests in property in their schedules and statement of financial affairs. Those assertions may be considered by the Court as evidentiary admissions under Fed. R. Evid. 801(d). *Scott v. Countrywide Home Loans, Inc. (In re Scott)*, 376 B.R. 285, 288 n.2 (Bankr. D. Idaho 2007) (citing *In re Schweizer*, 354 B.R. 272, 278 n.3 (Bankr. D. Idaho 2006); *In re Moore*, 269 B.R. 864, 869 n.7 (Bankr. D. Idaho 2001)). The Court concludes Debtor's assertions in its Schedules and Statement of Financial Affairs are more persuasive than the testimony and conclusions of Annette Moore, which Debtor primarily relies on in determining ownership of much of the equipment at issue.

Debtor's assertion of ownership of equipment in its Schedule A/B and Supplement is entitled to evidentiary weight. Debtor has not amended Schedule A/B during this case to alter those assertions.[13] Further, Question 21 on Debtor's Statement of Financial Affairs asked Debtor to "List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property." Debtor answered "none." Ex. 216 at 20. Debtor also did not disclose any lease or rental agreements for any equipment in its Schedule G. Ex. 216 at 14. It is noteworthy that Debtor first asserted that much of the equipment at issue

---

[13] Debtor also included all items listed on its Schedule A/B and Supplement in the liquidation analysis included in its First Plan, Ex. 301, and Second Plan, Ex. 304.

MEMORANDUM OF DECISION - 12

was not estate property only after the case was converted to a chapter 7 liquidation. In other words, Debtor took the position that it did not own certain equipment only when faced with the prospect of a chapter 7 trustee selling the equipment.

The Court gives less weight to Moore's testimony and conclusions regarding ownership of the equipment at issue because it is largely based on hearsay and documents not in the evidentiary record. Moore attempted to determine ownership of items of personal property starting with the items Debtor listed in its depreciation schedule attached to its 2015 federal tax return. Ex. 106 at ¶ 2. Moore then reviewed "all of the purchase records for various items of equipment that [she] could find, including checks and check registers." *Id*. Moore further testified that she reviewed Debtor's QuickBooks records, and relevant bank records, receipts, titles, and bills of sale she could locate. Moore testified she was unable to locate all such underlying records for all equipment at issue. Many of these underlying records are absent from the record. Moore also testified that she relied on input from Lunders when determining whether Debtor owned certain items of personal property.

The Court addresses one specific item of equipment listed in the Supplement, a 2009 John Deere 2054 tractor, that Debtor singled out in its closing argument as being owned by Lunders' "Uncle Don."[14] The record does not support this argument. Debtor listed this tractor in the Supplement and both proposed chapter 11 plans. *See* Ex. 300, 301, 304. Debtor never amended its Statement of Financial Affairs to disclose that it

---

[14] Debtor does not identify Uncle Don's last name. Therefore, the Court will refer to him just as Debtor did. No disrespected is intended.

MEMORANDUM OF DECISION - 13

possessed a 2009 John Deere 2054 tractor owned by a third party. Ex. 216 at 20. Neither did Debtor disclose any rental or lease agreement regarding the tractor in its Schedule G. Ex. 216 at 14.[15]

In sum, the Court concludes that all equipment listed in the Schedules and Supplement is property of the estate, and Debtor must forthwith surrender such equipment in its possession to Trustee.

### c.     Disputed Unscheduled Equipment

Trustee identifies three remaining items of equipment in his closing argument: (1) a 2009 SK290 Log Loader, (2) a 2005 Hitachi;[16] and (3) a Komatsu Log Loader. Each of these three items of equipment are listed Debtor's Evidence of Property Insurance from Northwest Insurance Agency. Ex. 315. Trustee relies exclusively on the fact that Debtor insured each of these items of equipment during the chapter 11 bankruptcy to establish Debtor owned the equipment. Debtor argues, however, that it insured items of equipment that it was permitted to use, but it did not necessarily own all this equipment. The Court concludes Trustee has not met his burden of proof to establish Debtor owned this equipment and is required to turn it over to Trustee.

Lunders testified that Debtor did not own the Hitachi 500 skidder. Instead, it was owned by Cascade Trailer. Debtor started using this equipment in September or October

---

[15] It is important to note the Court is only deciding the issue of whether Debtor is required to surrender possession of the 2009 John Deere 2054 tractor to Trustee. Should Trustee seek to liquidate the tractor pursuant to § 363(b), nothing in this Decision precludes Uncle Don from objecting to such a sale and proving he owns the tractor.

[16] This equipment appears to be the 1995 Hitachi EX200LC Excavator listed in the Evidence of Property Insurance.

MEMORANDUM OF DECISION - 14

of 2019. Lunders testified that he "signed over" a 2006 Western Star truck to Cascade Trailer in exchange for Debtor's use of the Hitachi 500 skidder. The record is unclear regarding the details of Debtor's transaction with Cascade Trailer regarding the Hitachi 500 skidder. The Court is unable to determine if Debtor acquired ownership of the Hitachi 500 skidder or merely the right to use this equipment when it "signed over" the 2006 Western Star truck.

Lunders also testified that Debtor did not own the Komatsu Log Loader and that Debtor was only entitled to use this equipment. Lunders was not sure whether the Komatsu Log Loader listed on Exhibit 315 was a piece of equipment Debtor was purchasing from Viking Lumber in Alaska, or if it was a Komatsu Log Loader that was owned by Cascade Trailer.

Given the sparse record regarding these three items of equipment, the Court is unable to determine the equipment constitutes estate property that Debtor must surrender to Trustee.

**CONCLUSION**

Based on the foregoing, Trustee's Motion will be granted in part. Debtor will be required to surrender all the property identified as property of the estate in this Decision. The Court will enter an appropriate order.

DATED: April 13, 2021



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 15